5. There is ample evidence to support the finding of the jury, which has the approval of the trial judge; no error of law was committed; and the court properly overruled the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*

DECIDED MARCH 6, 1924.

Indictment for manufacture of liquor; from Whitfield superior court—Judge Tarver. November 17, 1923.

*W. E. & W. G. Mann,* for plaintiff in error.

*J. M. Lang, solicitor-general,* contra.

---

### 15242.   JONES *v.* THE STATE.

BROYLES, C. J. 1. A condition precedent to the hearing of a case on its merits in this court is the payment of costs, or the filing in the clerk's office by the plaintiff in error of an affidavit signed by him of his inability to pay the costs. In the instant case the affidavit in forma pauperis, not having been signed by the plaintiff in error, is a mere nullity and amounts to nothing.

2. Upon the call of the case in this court, it appearing from the record that no affidavit in forma pauperis had been executed by the plaintiff in error, the case was submitted subject to the payment of costs within ten days, and that time having elapsed without such payment being made, this court is without authority to entertain the case.

*Writ of error dismissed. Luke and Bloodworth, JJ., concur.*

DECIDED MARCH 6, 1924.

Petition for certiorari; from Fulton superior court—Judge Humphries. November 15, 1923.

*J. E. Garst, R. O. Lovett,* for plaintiff in error.

*John A. Boykin, solicitor-general, Roy Dorsey, solicitor, E. A. Stephens,* contra.

---

### 15243.   BEACH *v.* THE STATE.

A conviction of the offense of manufacturing intoxicating liquors was not authorized by the evidence.

DECIDED MARCH 6, 1924.

Indictment for manufacture of liquor; from Whitfield superior court—Judge Tarver. November 17, 1923.

From the evidence it appeared that officers found in a branch in the woods a hot still and a considerable quantity of beer and

whisky; that the officers, when in the neighborhood of the still and before they found it, heard shots, which they took to be a warning to persons working at the still, and they did not find anybody there. It was testified that they took a trail from the still and followed it about half a mile and up a hill to the house of the defendant's brother-in-law, Miles Moore, and there found the defendants and a man named McQuinn (or McKin), with Moore and his wife and her sister, and found in the house a bottle of whisky. Ledford, one of the officers, after testifying that he saw the defendant and McQuinn there, added: "I remember we saw him going, and Mr. Cobb called these men out in the yard and arrested them, and Mr. Cobb told him he couldn't but he did go anyway, and I run to the back of the house and had to stop him with a gun. . . Mr. Cobb shot at McQuinn after he ran off." "This defendant had on what I would call work clothes when we arrested him, and we took it to be still slop on them. I have seen a good deal of still slop on clothes, and that in my judgment was still slop. . . There was fresh travel back that way from the still; it was as slick since the rain back there as to a man's spring. We didn't find any paths leading to any other houses; we stopped right there, didn't go anywhere else. When this trail came to the top of the hill it came into a road, but there was no travel in the other direction of the road since the rain. . . This road ran right down to this man's house, and all the travel since the rain ran to the house. They pulled the fire, in my judgment, when the shot was fired, because the still was full and some whisky was dripping out, and plenty of beer was there; we poured out about sixty gallons, I think. As we went up there anybody could have seen us, and . . just as we crossed over in the field the shots were fired up from the house and in a northerly direction of that still. . . We found a Mr. Stancell who came up to the still while we were there, and we arrested him too and brought him in. . . Stancell came down through the woods from a northerly direction and came into this trail, I will say, forty yards in front of us, right east of the still. I went over there and asked him what he was doing, and he first said, 'Just looking around,' and then said he was starting over there to see a sick woman and heard that racket, and came down to see what they were doing, and I followed back the way he came and found a ten-

gallon keg of whisky. . . The still is down in a hollow and couldn't be seen from the house" where the defendant was. "I doubt you could have seen the smoke or fire from the house without the smoke was going straight up." "When we left the still that boy and the other one helped us to carry it." "I think it was the latter part of June."

Another witness testified: "I have saw the defendant at a still, I think it was since Christmas; I think it was this year [1923]. I don't know whether it was in operation or not. It was in a hollow right close to the Kirby place. . . on a thirty-acre piece of land owned by Minnie Warrenfels. It looked like it had been there some little bit. It had been operated some. Mr. Beach (the defendant) wasn't doing anything when I was there. The still was running then. Jim Bailey and Arthur McKin were running it. The defendant had on his everyday clothes, I think. . . Dock McKin, a brother of Arthur, and Ollie Cavender were there also. I was just passing and went by. I knew the still was there before I went up. I suppose the still belonged to those other people; they were doing the running of it." Miles Moore and his sister-in-law testified for the defendant and contradicted testimony of the State's witnesses in material particulars. The defendant in his statement at the trial said that he was not guilty and that he did not know anything about "that business;" that at the time referred to by the witnesses he had been out fishing and came by to see his brother-in-law and sister.

*W. E. & W. G. Mann*, for plaintiff in error.

*J. M. Lang, solicitor-general*, contra.

LUKE, J. Beach was convicted of manufacturing intoxicating liquors. The evidence did not authorize his conviction, and for this reason it was error to overrule his motion for a new trial.

*Judgment reversed. Broyles, C. J., and Bloodworth, J., concur.*

---

15249.   BARLOW *v.* THE STATE.

BLOODWORTH, J.   Under the evidence in this case the judge properly charged the law of shooting at another; and as the evidence is ample to support a verdict for this offense, the motion for a new trial was properly overruled.   *Judgment affirmed. Broyles, C. J., and Luke, J., concur.*

DECIDED MARCH 6, 1924.